# United States Court of Appeals
## For the First Circuit

No. 13-2527

JONATHAN FOLEY,

Plaintiff, Appellant,

v.

WELLS FARGO BANK, N.A.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Torruella, Dyk,[*] and Thompson,
Circuit Judges.

Valeriano Diviacchi for appellant.
David M. Bizar, with whom Seyfarth Shaw LLP was on brief, for
appellee.

November 14, 2014

---

[*] Of the Federal Circuit, sitting by designation.

**THOMPSON, Circuit Judge.** Jonathan Foley sued Wells Fargo, N.A. ("Wells Fargo") for failing to consider him for a mortgage loan modification, which a class action settlement agreement required the bank to do before attempting to foreclose on Foley's home. The district court dismissed the four-count complaint, and Foley appeals the dismissal of three counts, arising under state common and statutory law, on various grounds.[1] Wells Fargo insists that the district court rightly dismissed the complaint because Foley failed to state a claim for any of the causes of action. Wells Fargo also argues that two of Foley's claims are preempted by a federal law governing home mortgage lending.

After a deliberate review, we find that the district court improperly considered evidence outside of the pleadings to resolve Wells Fargo's motion to dismiss, warranting a revival of Foley's common law claims. Foley's statutory causes of action, however, brought under Mass. Gen. Laws ch. 244, §§ 35A and 35B, did fall short of stating a cognizable claim, and therefore, we affirm their dismissal.

Accordingly, we vacate in part the judgment entered in Wells Fargo's favor, and remand Foley's claims for breach of contract (Count One) and breach of the implied covenant of good

---

[1] Foley did not appeal the district court's dismissal of his Mass. Gen. Laws ch. 93A claim (Count Three), and so we will not discuss it.

faith and fair dealing (Count Four).  We affirm the dismissal of Count Two, violation of Mass. Gen. Laws ch. 244.

## I.   BACKGROUND

To set the factual stage for this case, we rely on the allegations set forth in Foley's complaint, the documents attached to the complaint, and relevant public records.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  See also Medina-Velázquez v. Hernández-Gregorat, No. 12-2492, 2014 WL 4628506, at *3 (1st Cir. Sept. 17, 2014) ("[W]e construe the well-pleaded facts in the light most favorable to the plaintiffs, . . . accepting their truth and drawing all reasonable inferences in plaintiffs' favor.").

### A. Foley's Home Loan

Foley applied for a home mortgage loan from World Savings, FSB,[2] on March 7, 2005.  The bank offered Foley a "Pick-a-Payment" loan--a monthly, adjustable-rate mortgage that allowed the borrower to choose one of various payment arrangements, based on a minimum payment amount determined by the borrower. Foley accepted the $455,000 loan, and his monthly mortgage payment was approximately $1,600.

But Foley, like so many other borrowers, was affected by the housing crash of 2008.  The value of his home dropped

---

[2] Wells Fargo Bank, N.A. is the successor-by-merger to Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB.  We refer to the entities interchangeably, as do the parties, as "Wells Fargo" or "the bank."

significantly, preventing him from refinancing with a more favorable interest rate. He lost his job around October 2008, but used his savings to continue making mortgage payments for two years.

Come October 2010, Foley succumbed to his financial hardship and stopped making timely payments in-full, but did make some partial payments through April 2011. He sought a loan modification from the bank, and in April 2011, Wells Fargo informed him he might qualify for the Home Affordable Modification Program ("HAMP"), a federal program that allows qualified homeowners to reduce their monthly mortgage payments. Foley asked to participate, and the bank's representatives said they would send him an application.

## B. Pick-a-Payment Settlement

In the meantime, Wells Fargo settled a California class action lawsuit in May 2011. The plaintiffs in that suit had alleged that Pick-a-Payment loans violated the Truth-in-Lending Act because the loan documents failed to adequately disclose to borrowers certain loan conditions, including interest rates and payment schedules. The class action settlement agreement specified three categories of Pick-a-Payment borrowers, and the parties agree that Foley is a member of "Settlement Class B."

A few of the settlement agreement's terms, as they apply to Settlement Class B members, are relevant to Foley's case. The agreement provides:

> Settlement Class B Members . . . first shall be considered for a HAMP modification. . . . [Those] who do not qualify for or elect not to accept a HAMP modification shall be considered for a MAP2R modification.

"MAP2R" was a new proprietary modification program Wells Fargo created specifically for the settlement, and the step-by-step eligibility determination process for MAP2R (called the "waterfall" process) was spelled out in the agreement. The bank was required to apply seven specific (and rather complicated) sequential steps until a debt-to-income ratio of 31 percent was reached for the borrower. But if the bank followed the waterfall and could not reach 31 percent, it was not required to offer a MAP2R modification.

The settlement agreement also imposed certain "servicing commitments," created, according to the agreement, "[i]n order to ensure that Borrowers are appropriately considered for a MAP2R Modification in a timely manner." The agreement required, for instance, that Wells Fargo provide class members with clear, written explanations of modification denials, and in any foreclosure-related communications, a notification that the borrower was still being considered for a modification.

## C. Foley's Continued Pursuit

In the midst of the class action's resolution, Foley, presumably still unaware of the class action settlement, pressed on with HAMP, which Wells Fargo continued to tell him through November 2011 (six months after the California class action went into effect) was the only modification for which he might qualify. After numerous follow-up phone calls to Wells Fargo (which Foley started making on the heels of his April 2011 call with the bank's representatives), Foley finally received a HAMP application from the bank in November 2011--some seven months after they had promised to send it--which he promptly completed and returned.

Around January 2012, Foley received a letter from Wells Fargo stating it had not received his completed application. In 2012, Foley made many additional calls to Wells Fargo's "Home Preservation Specialist" (and, after she left the position, her replacement) to inquire about his application status, but his calls were never returned. In an Orwellian turn of events, he instead received letters explaining his "short sale" or "deed in lieu of foreclosure" options--neither of which would actually allow Foley

to "preserve" ownership of his home.[3]   Meanwhile, Wells Fargo scheduled foreclosure.

After several months of periodic, unreturned phone calls to the Specialist, a dissatisfied Foley spoke to the Home Preservation supervisor, who told him his HAMP application was either lost or never received, and that he would be sent a new application.   Foley received the application in November or December 2012 and returned it toward the end of the year.

Almost two years after Foley first asked for a modification, Wells Fargo sent him two letters around February 2013.   One letter notified him that he was rejected from HAMP, and the other informed him that he would not be offered "a modification" (though the letter did not specify for which modifications Foley was considered) because of his "excessive financial obligations."   The letters, which Foley attached to his complaint, provided no further explanation for the modification denials.   Wells Fargo again scheduled foreclosure.

After numerous further failed attempts to discuss a loan modification with Wells Fargo, Foley sought assistance from the Massachusetts Attorney General's Office ("AG's Office") around

---

[3] Both a "short sale" and "deed in lieu of foreclosure" are alternatives to foreclosure that still require the homeowner to forego ownership of his home.  In a short sale, the lender agrees to allow the borrower to sell the home for less than what he owes on the mortgage.  Opting for a deed in lieu of foreclosure means the homeowner hands over his interest in the property to the bank.

April 8, 2013.  The AG's Office contacted Wells Fargo and suggested that because of a change in Foley's financial situation,[4] a new modification application might be warranted.  Thereafter, the bank postponed the impending foreclosure, and Foley reapplied for HAMP.

Around July 5, 2013, Foley received two letters dated June 27, 2013 denying his request for a loan modification, again due to "excessive financial obligations."  These letters were substantively identical to the denial letters he received in February, despite the fact that Foley demonstrated "lessened hardship" the second go-round.  Foley called Wells Fargo to discuss the letters, and the Specialist told him he would need a monthly income of $10,000 to qualify for a modification.  Foley was "perplexed" by this explanation because he would not have needed a loan modification were his income that high.  Foley thereafter contacted the AG's Office again, informing it that Wells Fargo had not provided an explanation for his modification denials.  A few days later, he received another foreclosure notice from the bank.

The carousel kept spinning, and around July 15, 2013, the AG's Office yet again contacted Wells Fargo, asking the bank to provide a written explanation of Foley's modification denials and the specific names of the modifications for which he had been

---

[4] Foley alleged that he faced "lessened hardship" the second time he applied for a modification, but it is not clear from the complaint exactly how his financial situation changed at that point in time.

denied. After a couple of days, Foley got a call from Justin Forbes, of Wells Fargo's Executive Complaint Department. Forbes explained that Foley was rejected for all loan modifications, including HAMP and the "Mortgage Assistance Program." At some point that is not clear from the record, Foley became aware of his rights under the settlement agreement; armed with this knowledge, he asked Forbes "specifically whether he was considered for MAP2R[,] and [] Forbes responded 'no.'" Then, Forbes waffled, and "[u]pon further questioning[,] [] stated [Foley] was also rejected for [MAP2R]." When Foley expressed his view that he "was not afforded the procedural process under the MAP2R program, [] Forbes stated he will make inquiry to the Wells Fargo legal team." When Foley asked for a "written explanation regarding the MAP2R program rejection," Forbes gave the same response about needing to consult the bank's lawyers.

In a follow-up call on July 30, 2013--a year and a half after Foley first applied for a modification, and more than two years after Foley first asked to apply--Forbes told Foley he would receive detailed denial letters in a few days. Foley filed his complaint on August 1, 2013 before receiving any such letter.

## D. Foley's Lawsuit

With the threat of foreclosure looming, Foley filed a pro se suit in Plymouth Superior Court in Massachusetts.[5] The complaint alleged breach of contract (Count One), violation of Mass. Gen. Laws ch. 244, §§ 35A and 35B (Count Two), violation of Mass. Gen. Laws ch. 93A (Count Three), and breach of the implied covenant of good faith and fair dealing (Count Four) for the bank's alleged mishandling of Foley's loan modification requests. Namely, Foley alleged that the bank misled him about his rights under the settlement agreement, misguided him during the modification process, and altogether ignored his modification requests. Foley's complaint ultimately sought specific performance of the settlement agreement and some unspecified damages. Foley also moved for a temporary restraining order and preliminary injunction, in an effort to stave off the foreclosure scheduled to take place about a week later.

Wells Fargo removed the case to federal court, where Foley renewed his motion for preliminary injunctive relief. In opposing the injunction motion, Wells Fargo submitted a letter dated July 30, 2013. The letter stated that Foley was denied HAMP relief because his monthly loan payment would amount to 58 percent of his gross monthly income. As to MAP2R, the letter indicated:

---

[5] Foley proceeded in both the state and federal trial courts pro se, but obtained counsel for his appeal.

> MAP2R provides guidelines to reduce a borrower's monthly mortgage payment to 34.00% of their gross monthly income. Under the MAP2R guidelines, we were unable to sufficiently adjust the terms of the loan to achieve an affordable housing payment reflective of 34.00% of your gross monthly income.[6]

## E. The District Court's Rulings

After a hearing on Foley's motion for injunctive relief, the district court temporarily enjoined Wells Fargo from foreclosing on Foley's home, pending an evidentiary hearing on the motion. While the injunction motion was in abeyance, Wells Fargo moved to dismiss Foley's complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), to which Foley filed a written opposition.

The case was reassigned to another trial judge, who conducted the evidentiary hearing on the preliminary injunction. At the close of the hearing, the judge orally denied Foley's motion for injunctive relief, and stated that he was "not going to take up" the pending motion to dismiss because he deemed it "appropriate to consider that on the papers." The court later entered a written order allowing Wells Fargo's motion to dismiss and disposing of all of Foley's claims, without conducting a hearing.

This timely appeal followed.

---

[6] The settlement agreement required the bank to reduce the mortgage payment to 31 percent of the borrower's income, not 34 percent.

## II. DISCUSSION

### A.  Foley's Contract Claims (Counts One and Four)

We begin by addressing Foley's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  First, we explain how the trial judge applied the incorrect standard of review, and why this error warrants a remand of these contract-based claims.  Then, we discuss why we are also unmoved by Wells Fargo's alternate proposed grounds for affirming the dismissal of these claims.  In so doing, we address Wells Fargo's apparent misapprehension of Foley's pleaded grievances--an issue raised in both parties' briefs and relevant to Wells Fargo's assertion that certain arguments brought by Foley's counsel on appeal are waived.

#### 1. Improper Rule 56 Conversion

We start our analysis by laying out the appropriate standard of review for a Rule 12(b)(6) motion to dismiss for failure to state a claim.  A court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the plaintiff's complaint set forth "a plausible claim upon which relief may be granted."  Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 353 (1st Cir. 2013).  The court must take all of the pleaded factual allegations in the complaint as true.  Watterson, 987 F.2d at 3.  Barring "narrow exceptions," courts tasked with this feat usually consider only the complaint, documents attached to it, and

documents expressly incorporated into it.  Id.  Thus, a primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, the plaintiff could never win.  In short, plaintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion, but need only sufficiently allege in their complaint a plausible claim.

Compare that to a Rule 56 motion for summary judgment, where the court must determine whether "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Defendants typically bring Rule 56 motions after some, if not all, of the discovery process has concluded because to prevail on the motion, the movant must direct the court to specific, admissible evidence in the record in order to show that the other side could not win at trial. See Fed. R. Civ. P. 56(c).

Sometimes, though, waiting until after discovery is over to dispose of a claim on summary judgment is an asinine exercise, if defendants possess some document that could help a court do so earlier on in the life of the case.  Promoting judicial efficiency, the Rules account for circumstances like these and allow district courts the leeway to consider documents outside the complaint (as well as the "narrow exceptions" we identified above) by converting a defendant's Rule 12(b)(6) motion into a Rule 56 motion.  Fed. R.

Civ. P. 12(d). This conversion need not be express, but the court must give both sides "a reasonable opportunity to present all the material that is pertinent to the motion." Id.; Bartlett v. Dep't of the Treasury (I.R.S.), 749 F.3d 1, 12 (1st Cir. 2014).

Given that procedural framework, we discuss why, in our view, the district court in the instant case converted Wells Fargo's motion to dismiss Foley's contract-based claims into a motion for summary judgment--though not expressly--and did so improperly, warranting a remand of those claims.[7]

The motion to dismiss proceedings before the district court provide the backdrop for our analysis.

The class action settlement agreement required that Wells Fargo "consider" Foley for a HAMP and MAP2R modification. As far as we can tell, neither party has disputed that fact throughout the life of this case.

---

[7] Foley does not cite Rule 12(d) in his briefing. We, however, consider the issue of the district court's improper conversion of the motion to dismiss sufficiently raised. Foley asserts that the district court misapplied the standard of review for a motion to dismiss in reaching its ultimate conclusion that Wells Fargo "performed its obligation under the settlement agreement to consider Plaintiff for MAP2R." He argues that the district court's "conclusion that Wells Fargo actually met its obligation to consider Mr. Foley for MAP2R is wholly unsupported by the available evidence, which raises unresolved factual questions about how and when Mr. Foley was considered for a loan modification." Foley's counsel crystalized these contentions at oral argument, comparing the district court's treatment of the case to a summary judgment hearing, and noting that it remained a disputed issue of fact whether Foley was considered for a modification, despite the contents of the July 30 letter.

-14-

But the parties diverge on whether Foley, in drafting his pro se complaint, understood the extent of Wells Fargo's obligations under the settlement agreement. As Wells Fargo explained in its motion to dismiss, it interpreted Foley's allegations to amount to a "grievance [] that he was not approved for a loan modification." But, Wells Fargo urged, "nothing in the Settlement Agreement required Wells Fargo to approve him." In response, Foley argued to the district court in his written opposition to the motion to dismiss that Wells Fargo misunderstood the nature of his allegations, and that in fact, he pleaded that Wells Fargo did not consider him for a modification, as required by the settlement agreement, and did not comply with the agreement's other procedural mandates.

In its order, the district court agreed with Foley and held that "defendant reads the complaint too narrowly. In fact, plaintiff asserts not only that defendant failed to provide him a MAP2R modification, but also that it failed to even consider him for one." Similarly, as to the claim for breach of the implied covenant of good faith and fair dealing, the court found that Foley's "allegations that defendant's inability to communicate effectively about MAP2R prevented plaintiff from being considered for such a modification could state a claim for breach of the implied covenant of good faith and fair dealing."

And so it seems the district court concluded that Foley successfully pleaded both a breach of the settlement agreement and a breach of the implied covenant of good faith and fair dealing. Thus, on a Rule 12(b)(6) motion, the district court's inquiry should have ended.

Unfortunately, the district court's inquiry did not start and end with the pleadings. Recall that Wells Fargo submitted during the injunction proceedings a letter dated July 30, 2013. In that letter, Wells Fargo explained that Foley was denied HAMP and MAP2R because he did not fit within the income guidelines for those programs.

Relying on that letter, the district court dismissed Foley's breach of contract claim because "it appears that defendant performed its obligation under the settlement agreement to consider plaintiff for MAP2R." The court also dismissed the good faith and fair dealing claim on the theory that "defendant did consider plaintiff for MAP2R, and its poor communication does not appear to have ultimately and substantially interfered with plaintiff's rights under the contract." Thus, despite identifying the correct standard of review for a Rule 12(b)(6) motion (and its requirement that the court be limited to considering the complaint and its attachments), the district court side-stepped the standard, relied on a document extraneous to the pleadings, and decided Foley's claims on the merits. That series of events, in our estimation,

equates to converting a motion to dismiss into a motion for summary judgment.

Still, Rule 12(d) says the district court would have been permitted to make this conversion if it had given the parties a reasonable opportunity to present materials pertinent to the motion. Fed. R. Civ. P. 12(d). Alas, the court did not. Discovery never started in this case, and, as Foley noted during the injunction hearing, Wells Fargo possessed the information he would need to determine whether the bank fairly reviewed his eligibility for a modification. When discovery has not "begun and the nonmovant has had no reasonable opportunity to obtain and submit additional evidentiary materials to counter the movant's [evidence], conversion of a Rule 12 motion to a Rule 56 motion is inappropriate." Whiting v. Maiolini, 921 F.2d 5, 7 (1st Cir. 1990). Foley was given no opportunity, let alone a reasonable one, to collect and present evidence that would contradict Wells Fargo's. Foley had no way to even challenge whatever numbers the bank used to make its calculations. Thus, Foley was provided no reasonable opportunity to gather or present actual evidence pertinent to his claims.

We recognize that we have extended leniency toward a district court's failure to provide express notice of its intention to convert a motion to dismiss when such failure was harmless. See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60-61 (1st Cir.

2000). But "we treat[] any error in failing to give express notice as harmless when the opponent has . . . had an opportunity to respond to [the relied-upon evidence]." Bartlett, 749 F.3d at 12 (quoting Boateng, 210 F.3d at 60). And, as we discussed above, it appears from the court's decision that Foley's claims would have survived, had the court applied the correct standard of review. Strikingly here, the judge also specifically told the parties at the injunction hearing that he was not hearing them on the motion to dismiss and rather, would resolve that motion "on the papers." Based on this representation, Foley had no reason to know the court would be considering documents filed by Wells Fargo in opposition to the injunction motion to resolve the motion to dismiss. In its written decision, the court also explicitly penalized Foley because he "offered no evidence" to refute the representations Wells Fargo made in the July 30 letter. If Foley had some notice of the court's thinking, he may have attempted to provide such evidence (keeping in mind the practical limitations Foley faced even accessing relevant information without discovery). This record makes abundantly clear that the district court's conversion to a summary judgment motion was premature, and that the failure to expressly convert the motion to dismiss was not harmless.

We must also address another wrinkle in this procedurally complicated matter. Both Wells Fargo and the district court have suggested that the July 30 letter was proper to consider on a Rule

12(b)(6) motion because, even though it was not attached to the complaint, it was a part of the pleadings.

Courts are permitted, in some instances, to consider on a Rule 12(b)(6) motion documents that were not attached to the complaint. We have found these "narrow exceptions" to include "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3.

In its decision, the district court relied on the theories that Foley "did not contest the authenticity of the letter" and that he referred to the letter in his complaint. Wells Fargo further asserts that the letter was "integral" to Foley's pleading.

But we are not so convinced. Concerning the first category (documents of undisputed authenticity), we reiterate that Foley had no opportunity to challenge the document in question. What's more, Foley made clear on the record during the preliminary injunction hearing that he was suspicious of the document. The July 30 letter was an exhibit to an affidavit submitted in opposition to the injunction motion, and the affiant, Wells Fargo Operations Analyst Michael Dolan, attested that the letter was a "true and accurate copy." Foley told the court during the evidentiary hearing that Dolan was "not trustworthy and not

believable," based on, according to Foley, findings by a judge in another matter that Dolan's statements were "unreliable." Foley, in fact, labeled the affidavit itself "faulty." It follows that Foley called into question the integrity of the attached documents, the authenticity of which Dolan attested to.

As to the second category (documents central to the claims), we do not see how the letter is integral to any of Foley's claims. Most especially, the surviving contract claims revolve around Wells Fargo's alleged failure to fairly consider Foley's modification eligibility over the course of the year and a half prior to the letter's existence.

Finally, as to the third category (documents sufficiently referred to in the complaint), the district court recognized in its order that Foley had not yet received the letter when he filed his complaint.[8] The closest the complaint comes to referencing the letter is in relaying Forbes's July 30, 2013 statement that Foley "would be receiving detailed modification letters in a few days." Foley could not have sufficiently referred to a document he had yet seen, or the existence of which he had yet learned. Thus, the July 30 letter was not a part of Foley's pleadings.

---

[8] While the order states that the letter was "something that _defendant_ had not yet seen" (emphasis added), given the context of the discussion, we assume this was a stenographic error and the court intended to say that _plaintiff_ had not seen the letter.

Given all of these considerations, we conclude that the district court erroneously converted Wells Fargo's motion to dismiss into a motion for summary judgment without providing Foley a reasonable opportunity to present material pertinent to the motion.

## 2. Other Grounds for Dismissal

Wells Fargo also argues that regardless of the July 30 letter, dismissal of the contract claims was proper on two other grounds: (1) the breach of the implied covenant claim is preempted by the federal Home Owners Loan Act ("HOLA"), and (2) neither contract claim was sufficiently pleaded in the complaint.

We quickly dispense of the first argument. The district court did not address this potential alternative ground for dismissal, and we also decline to delve into it. See Town of Amherst, N.H. v. Omnipoint Commc'ns Enters., Inc., 173 F.3d 9, 16 (1st Cir. 1999) (declining to affirm dismissal on an alternative ground not addressed by the district court); Pilgrim Badge & Label Corp. v. Barrios, 857 F.2d 1, 4 (1st Cir. 1988) (same); see also Clifford v. M/V Islander, 751 F.2d 1, 9 n.4 (1st Cir. 1984) ("Without the benefit of any district court . . . legal discussion concerning these matters, it would be idle for us to comment further about them.").

Given, however, that the district court's decision did at least to some extent speak to Foley's pleadings, we will address

-21-

Wells Fargo's sufficiency argument.[9]  In sum, we conclude that Foley did state a claim for both of his contract-based causes of action.

### i. Standard of Review

In analyzing whether a complaint has stated a claim sufficient to satisfy Rule 12(b)(6), we "[s]et[] aside any statements that are merely conclusory," and, as we touched on above, look at the factual allegations to "determine if there exists a plausible claim upon which relief may be granted." Woods, 733 F.3d at 353.  We make reasonable inferences, drawn from the alleged facts, in the pleader's favor.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  And we construe pro se complaints, like Foley's, liberally.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

### ii. Breach of Contract

Neither party disputes that the settlement agreement itself dictates our use of California law.  Thus, Foley need have pleaded: "(1) existence of a contract; (2) [his] performance or excuse for non-performance; (3) [Wells Fargo's] breach; and (4) resulting damages to [him]."  Bellevue v. Prudential Ins. Co. of Am., 23 F. App'x 809, 810-11 (9th Cir. 2001) (citing Careau & Co.

---

[9] In so doing, we only address the portions of Wells Fargo's arguments that do not turn on the July 30 letter, which, as we discussed above, is not proper to consider on the Rule 12(b)(6) motion.

v. <u>Sec. Pac. Bus. Credit, Inc.</u>, 272 Cal. Rptr. 387, 395 (Cal. Ct. App. 1990)).  Wells Fargo argues that Foley failed to adequately plead both a breach of the settlement agreement and damages.  We first tackle the breach.

Wells Fargo contends that the only argument Foley raised below (and thus, preserved for appeal) was that "Wells Fargo should have afforded him the right to apply for MAP2R separately from HAMP, and should have known that he was doing so."  Wells Fargo asserts that these grievances do not state a cognizable breach of the settlement agreement because there is "no provision in the settlement agreement that obligates Wells Fargo to obtain two different applications from borrowers to consider them for HAMP and MAP2R," and "no term of the agreement obligates Wells Fargo to notify borrowers that it is considering both programs under a single application, or to provide a denial letter specifically referencing 'MAP2R.'"  Foley, on the other hand, counters that Wells Fargo misinterprets his beef with the bank--in addition to failing to fairly consider him for MAP2R, the bank shirked its obligation to timely inform him of the reasons for the modification denial.

We agree that Wells Fargo underestimates the extent of its obligations under the settlement agreement.  The agreement required the bank to:

> Provide Settlement Class Members who do not qualify for HAMP or MAP2R Modifications,

within thirty [] calendar days of the Defendants' receipt of all required documentation from the Settlement Class Member, with a written explanation, which shall be copied to Lead Class Counsel, which clearly explains the reasons that the modification was denied.

Thus, Wells Fargo is correct that the settlement agreement did not per se require the bank to "provide a denial letter specifically referencing 'MAP2R'." But--assuming the bank reviewed Foley's MAP2R eligibility, as it claimed--the agreement did require Wells Fargo to clearly communicate to Foley, in writing and within thirty days, why he was denied for MAP2R. Foley pleaded that neither the February nor June 2013 denial letters he received even mentioned MAP2R. The AG's Office called the bank on Foley's behalf and requested a written explanation of the denials, including the specific names of the modifications Foley had been considered for. When Foley thereafter spoke to Forbes in July and asked whether he had been considered for the program, he could not get a straight answer. In fact, Forbes, an agent of the bank, initially told Foley outright that he had not been considered for MAP2R. Given these facts, Foley has sufficiently alleged, at the least, that the bank breached the settlement agreement through (as Foley specifically alleged in his complaint) "non-disclosure of reasons for rejection of modification." Thus, despite Wells Fargo's contentions, the "allegedly confusing conversation with a bank representative" is, in fact, material to Foley's claims.

-24-

Whether or not the explanations Wells Fargo provided in the denial letters were clear (as was also required by the contract) is a factual dispute that cannot be resolved on a Rule 12(b)(6) motion. Thus, Foley has adequately pleaded a breach of the settlement agreement.

### iii. Breach of the Implied Covenant

Under California law, the implied covenant of good faith and fair dealing requires that parties "invested with discretionary power affecting the rights of another" exercise such power in good faith, "to assure that the promises of the contract are effective and in accordance with the parties' legitimate expectations." Ellsworth v. U.S. Bank, N.A., 908 F. Supp. 2d 1063, 1086 (N.D. Cal. 2012) (quoting McNeary-Calloway v. JP Morgan Chase Bank, N.A., 863 F. Supp. 2d 928, 957 (N.D. Cal. 2012) (applying California law)). Wells Fargo argues that Foley failed to adequately allege a claim for breach of the implied covenant because any "alleged failure to communicate does not negate the fact that Wells Fargo considered Foley for HAMP and MAP2R modifications." Similarly, the bank argues that the implied covenant claim fails because Foley "must identify a specific contractual obligation that the defendant breached."

As we discussed above, neither of these contentions hold water. As Foley has asserted all along, he believes the bank failed to provide him his due procedural rights under the contract.

The obligation to properly consider Foley for a modification lies separate and apart from the bank's further responsibility--under the express terms of the settlement agreement--to explain a denial to a borrower.

### iv. Damages

Even though Foley sufficiently pleaded a breach of the contract, we recognize that he also need have adequately pleaded damages. Wells Fargo argues that Foley did not do so because he "repeatedly pleads that the only harm he has suffered is the <u>possibility</u> of foreclosure."

But Wells Fargo misconstrues the nature of Foley's alleged basis of damages. Any harm Foley felt as a result of the bank's breach of the settlement agreement would lie independent of any foreclosure, or the threat of one. We concede that Foley did not necessarily explicitly plead his damages in detail, but he needn't have. Given the allegations in the complaint, Foley's damages are obvious--Wells Fargo's failure to consider him for refinancing (or to adequately and timely explain why he was not eligible for it, thus preventing him from attempting to become eligible) would result in, for instance, his loan falling further into the depths of default, additional interest accrued and penalties on the loan, and negative effects on his credit. The alleged harm could be remedied with the equitable relief of specific performance Foley seeks, or with direct or consequential

damages, or with nominal damages, which plaintiffs are permitted to recover for breach of contract actions under California law. See Ericson v. Playgirl, Inc., 140 Cal. Rptr. 921, 927 (Cal. Ct. App. 1977) ("Plaintiff . . . is entitled to recover nominal damages for breach of contract."); Capell Assocs., Inc. v. Cent. Valley Sec. Co., 67 Cal. Rptr. 463, 471 (Cal. Ct. App. 1968) ("There was a breach of contract, therefore [plaintiff] is entitled to nominal damages."). Therefore, we do not agree that Foley has failed to allege damages, at least not on the instant ground, which is the only one Wells Fargo has raised.

Given these findings, we decline to sustain the district court's dismissal of the contract claims, as Foley has adequately alleged them. We, therefore, vacate the dismissal of the contract claims, Counts One and Four, and remand these counts to the district court.

## B. State Statutory Claims (Count Two)

Finally, we address Foley's objections to the district court's dismissal of Count Two, where he alleged that Wells Fargo violated Mass. Gen. Laws ch. 244, §§ 35A and 35B. While the district court held that these state statutes are preempted by the federal Home Owners Loan Act, we affirm the dismissal of this count on the other ground Wells Fargo raises--that Foley has failed to

state a claim under either statute.[10]  See Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) ("[W]e are not bound by the district court's decisional calculus but rather, may affirm the decision below on any ground made manifest by the record.").

Mass. Gen. Laws ch. 244, § 35A(g) prohibits a lender from accelerating a mortgage because of a default "until at least 150 days after the date a written notice is given by the [lender] to the [borrower]."  The next subsection, (h), provides for no fewer than ten elements that must be included in the notice,[11] ranging

---

[10] We acknowledge that in addition to the district court, at least one other court has held that (at least) § 35A is preempted by HOLA.  See Sovereign Bank v. Sturgis, 863 F. Supp. 2d 75, 103 (D. Mass. 2012).  We have not answered the question of whether §§ 35A and 35B are preempted, and we are not aware of any other circuits that have.  In any event, we need not decide that legal issue to resolve the instant appeal.

[11] The requirements that must be included are:

(1) the nature of the default claimed on such mortgage of residential real property and of the mortgagor's right to cure the default by paying the sum of money required to cure the default;(2) the date by which the mortgagor shall cure the default to avoid acceleration . . .;(3) that, if the mortgagor does not cure the default by the date specified, the mortgagee, or anyone holding thereunder, may take steps to terminate the mortgagor's ownership in the property by a foreclosure proceeding or other action to seize the home; (4) the name and address of the mortgagee . . . and the telephone number of a representative of the mortgagee . . .; (5) the name of any current and former mortgage broker or mortgage loan originator for such mortgage or note securing the residential property; (6) that the mortgagor may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling

from information about the lender to notification about the possibility of a foreclosure sale. Mass. Gen. Laws ch. 244, § 35A(h).

In his complaint, Foley pleads that Wells Fargo "did not follow the strict compliance and performed in accordance with the statute's requirements." He also pleads that he "did not receive any notices from Defendant regarding compliance requirements under M.G.L. 244, section 35A and B." The complaint does not identify whether Foley believes subsection (g) or (h) was violated, and, while this is not necessarily a fatal omission, we also cannot readily discern from the pleadings which violation Foley intended to allege. Foley's briefing does not shed any light, as it does not address the sufficiency of his pleadings in this regard.

---

agency, and the local or toll free telephone numbers the mortgagor may call to request this assistance; (7) that the mortgagor may sell the property prior to the foreclosure sale and use the proceeds to pay off the mortgage; (8) that the mortgagor may redeem the property by paying the total amount due, prior to the foreclosure sale; (9) that the mortgagor may be evicted from the home after a foreclosure sale; and (10) the mortgagor may have the following additional rights, depending on the terms of the residential mortgage: (i) to refinance the obligation by obtaining a loan which would fully repay the residential mortgage debtor; and (ii) to voluntarily grant a deed to the residential mortgage lender in lieu of foreclosure. The notice shall also include a declaration, in the language the creditor has regularly used in its communication with the borrower, appearing on the first page of the notice stating: "This is an important notice concerning your right to live in your home. Have it translated at once."

Mass. Gen. Laws ch. 244, § 35A(h).

In his opposition to the motion to dismiss, however, Foley clarified that he intended to aver only that the content of Wells Fargo's default notice was non-compliant, falling under subsection (h). Even taking that representation as true, problematic is that unlike his identification of documents in the contract counts, Foley does not specify in the complaint which piece of correspondence from the bank he believes violated Section 35A(h). In our review of the more than 100 pages appended to the complaint, we have identified a letter dated January 12, 2012 that appears to be a notice of default. Assuming this is the document Foley complains of, he still does not help us by identifying in his complaint, opposition to the motion to dismiss, or any of his briefing to us which of Section 35A(h)'s multitude of requirements he believes were not included in the written default notice. And we will not guess. Thus, even construing Foley's pro se complaint liberally, we cannot conclude that Foley's Section 35A claim was well-pleaded, and we affirm its dismissal.

We encounter the same problems with Foley's Section 35B claim. Again, Foley does not specify in his complaint or briefing which subsection he believes was violated, but in opposing the motion to dismiss, he asserted that "Section 35(B)(c) applies as a matter of law." That subsection requires that "for certain mortgage loans, the creditor shall send notice, concurrently with the notice required by subsection (g) of section 35A, of the

borrower's rights to pursue a modified mortgage loan." The statute lays out a follow-up process the lender must comply with after sending the notice and receiving a response from the borrower indicating his intent to pursue a modification:

> Not more than 30 days following receipt of the borrower's notification that the borrower intends to pursue a modified mortgage loan, a creditor shall provide the borrower with its assessment, in writing, under subsection (b). The assessment shall include, but not be limited to: (i) a written statement of the borrower's income, debts and obligations as determined by the creditor; (ii) the creditor's net present value analysis of the mortgage loan; (iii) the creditor's anticipated net recovery at foreclosure; (iv) a statement of the interests of the creditor; and (v) a modified mortgage loan offer under the requirements of this section or notice that no modified mortgage loan will be offered.

Mass. Gen. Laws ch. 244, § 35B(c). Foley does not identify which notices he believes were non-compliant, whether he believes the notices were never sent at all, or whether one of the other requirements in the statute was violated. This lies in stark contrast to the common law contract claims, where, as discussed above, Foley points to specific portions of the settlement agreement that were allegedly breached by Wells Fargo's specific actions and/or specific actors. As we have previously warned in the summary judgment context (and as is equally applicable to our Rule 12(b)(6) inquiry), we are not "'pigs[] hunting for truffles' in the record." Rodríguez-Machado v. Shinseki, 700 F.3d 48, 50

-31-

(1st Cir. 2012) (per curiam) (quoting <u>United States</u> v. <u>Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)). While we are certainly sympathetic to the challenges pro se plaintiffs may face in filing a lawsuit on their own, it is not our job, in an effort to ferret out the adequacy of a plaintiff's pleaded allegations, to haphazardly mine documents appended to a complaint. Foley's Section 35B claim was not well-pleaded, and its dismissal is affirmed.

## III. CONCLUSION

For all of these reasons, we conclude that the district court did not provide Foley with sufficient notice prior to converting Wells Fargo's motion to dismiss into a motion for summary judgment on the two contract-based claims. The dismissal of these claims is not warranted on sufficiency grounds. Therefore, we remand Counts One and Four to the district court for further proceedings, consistent with this opinion. We affirm the dismissal of Foley's statutory claim arising under Mass. Gen. Laws ch. 244, §§ 35A and 35B, given that those causes of action were not adequately pleaded. We also award Foley his costs of appeal.