**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 17-1631

JONATHAN FOLEY,

Plaintiff, Appellant,

v.

WELLS FARGO BANK, N.A., s/b/m Wells Fargo Bank Southwest, N.A.,
f/k/a Wachovia Mortgage FSB, f/k/a World Savings Bank FSB,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,[*] Associate Justice,
and Kayatta, Circuit Judge.

David Hadas, with whom Drohan, Hitt & Hadas, LLC was on brief, for appellant.
David M. Bizar, with whom Dallin R. Wilson, Robert J. Carty, Jr., and Seyfarth Shaw LLP were on brief, for appellee.

July 24, 2018

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**.  The plaintiff, Jonathan Foley, appeals from summary judgment entered for Wells Fargo Bank, N.A., in an action seeking to enjoin the bank's threatened foreclosure under Foley's existing mortgage, and alleging that the bank was in breach of contract in denying his application to rewrite the mortgage contract.  We affirm.

This is the second plaintiff's appeal in this action, the first having been for dismissing the case by treating the bank's motion to dismiss under FRCP Rule 12(b)(6) as one for summary judgment under Rule 56, but without affording Foley the full opportunity to adduce evidence that a summary judgment motion allows.  See Foley v. Wells Fargo, 772 F.3d 63, 71-75 (1st Cir. 2014).  On remand the required Rule 56 procedure was observed, but with the same result.  Our earlier opinion remains useful in providing a detailed recitation of procedural history, and our factual account this time will be limited to what is strictly necessary to understand the case in its present posture.

Over a decade ago, Foley obtained money for a Massachusetts real estate purchase from a predecessor of Wells Fargo under a "Pick-a-Payment" plan, providing for a variable-rate mortgage allowing the borrower to choose from a range of payment options.  As the financial climate worsened, an action was brought in California against the bank by a class including

Foley upon a claim that the plan violated the federal Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq*. A class settlement eventuated, which provided that the defendant bank would consider defaulting borrowers for substitute terms under a federal scheme with a name abbreviated as HAMP and under another alternative devised specifically for purposes of the settlement and known as MAP2R. One feature common to the criteria for each was a limit on the percentage that a new monthly payment or payments could bear to the borrower's monthly gross income: 42% under HAMP, 31% under MAP2R. If an application was denied, the bank was required to provide the borrower with a "written explanation."

When Foley defaulted on his mortgage payments in 2010, the bank gave notice of foreclosure and furnished materials to apply for a superseding mortgage. What followed was a complicated exchange of letters, including duplicate letters, re-submitted applications, telephone conversations, and intervention by the Attorney General of Massachusetts. But there is no evidence or evidentiary proffer inconsistent with the conclusion that, by the time the sequence of communications was over, Foley had been told in writing that the bank had considered and denied relief under both schemes. Foley, dissatisfied, began this litigation in the Massachusetts courts, from which it was removed to federal district court. The full

- 3 -

details of the sequence of its procedural events need not be set out here, for this appeal is limited to a claim that there is a triable issue whether Wells Fargo's denial of Foley's application for relief under the MAP2R scheme was a breach of the settlement agreement, Foley being undisputedly a class member. Because the case was decided on a motion for summary judgment, we review de novo the district court's conclusion that there was no genuine issue of fact that could have been found in Foley's favor that would have stood in the way of concluding that the bank was entitled to judgment as a matter of law. See Prescott v. Higgins, 538 F.3d 32, 39-40 (1st Cir. 2008).

Throughout the course of this litigation, Foley has charged that the bank has not complied with its obligations under the settlement agreement, an argument that covers two claims. First, he says that the bank failed to provide a sufficiently clear "written explanation" specific to the MAP2R application that went beyond a merely general and conclusory statement that the application was denied. The second is an argument that he satisfied the MAP2R criteria on the merits and was thus entitled to relief. We find no genuine issue of material fact on these points and agree with the district court that the bank is entitled to judgment.

The controversy about adequacy of detail as raised in the first claim risks submerging it in a dispute about whether a

required explanation for denying relief must be "clear," as our earlier opinion assumed in passing that it must be. See Foley, 772 F.3d at 69, 76. If clarity of explanation is required, so Foley's argument implicitly goes, a failure to mention "MAP2R" in the first denial letter and a subsequent letter's reference to excessive monthly debt obligations, or an excessive obligation-income ratio, could not suffice. In reply, the bank argues that in drafting the settlement agreement a proposed express clarity requirement was dropped, resulting in the final, unadorned "written explanation" term, implying a relaxed standard of explanation. Foley counters that by arguing that California's parol evidence rule would bar the bank's argument based on drafting history. We find the controversy irrelevant to this case.

As for the bank's failure to refer expressly to the MAP2R application in a denial letter, we have already held that such express labeling is unnecessary so long as the reason for the denial is conveyed, see Foley, 772 F.3d at 76, and Foley offers no evidence raising a genuine doubt that it was.[1] Indeed,

---

[1] In the district court Foley presented a more general argument for the inadequacy of the "written explanation," in characterizing the first and subsequent letters as "vague" and "contradictory." Although we do not see self-contradiction in the cycle of notification letters, we agree that some of them that were meant to refer to MAP2R were opaque on their face, and we will be candid to say that the months spent by the two parties arguing over the "written explanation" requirement tend

the letter accurately stated that the bank was unable to offer a loan modification because Foley had "excessive financial obligations." In any event, a further denial letter some five months later did make reference to each plan expressly.

As for the failure to specify more than debt obligations, when the bank spoke of unacceptably high liability for payment on debt, it could be understood only as referring to the basis for calculating the percentage of monthly obligations compared with monthly income. There can be no doubt that it thus informed the borrower of the underlying facts and computations he must revisit if he wished to appeal the bank's denial.

In his submission to this court, Foley of course recognizes this, as is clear from his final challenge to the adequacy of the bank's explanation, in which he attacks the

---

to confirm the criticism of other courts that have expressed doubts about Wells Fargo's capacity or willingness to rewrite mortgage loans under the terms of the settlement. See, e.g., In re Wachovia Corp."Pick-a-Payment" Mortg. Mktg. & Sales Practices Litig., 2014 WL 2905056, at *4 (N.D. Cal. June 26, 2014); In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig., 2013 WL 5424963, at *5-6 (N.D. Cal. Sept. 25, 2013). But Foley's citations to these cases are beside the point in this case, and in any event the explanatory cycle ended with a letter that made it abundantly clear that Foley's applications were denied for failure to show that the revised monthly payments would be within the percentages of the borrower's monthly gross income necessary to qualify under the two schemes in question, HAMP and MAP2R. The time required to reach this elementary degree of clarity has not been claimed as an independent basis for awarding any relief to Foley.

underlying figures used to compute the ultimate obligation-income percentage calculation. If the figures he presented to the district court were accepted, his monthly installment under the new mortgage agreement would indeed be no more than 31% of monthly gross income as allowed under the MAP2R plan. But one of his numbers was patently wrong under the plan's terms, as the district court came to realize in performing its own determination of the crucial percentage. As to monthly income, the court gave Foley the benefit of some doubt and used his number, but Foley's monthly installment obligation figure was too egregiously inaccurate to indulge. The MAP2R definition of that monthly obligation included the monthly homeowners' association fee and homeowners' insurance premium for the mortgaged property, each of which Foley had omitted. When they were added, the resulting installment came out above the allowable 31%, thus mandating a finding of ineligibility.

We are unable to find any basis to dispute the court's correction; Foley has not responded on the record by challenging the definition as the court understood it or the factual correctness of the two numbers added to the figure Foley himself had used. The consequence is that by accepting Foley's own assumptions, subject to the undisputed correction, Foley is shown to be ineligible for MAP2R relief, based on a computation about which there is no genuine dispute.


Affirmed.