ON AMENDED MOTION FOR REHEARING AND CLARIFICATION AND MOTION FOR REHEARING EN BANC.
PER CURIAM.
We grant appellants’ amended motion for rehearing and clarification and deny then-motion for rehearing en bane. In our earlier decision, 615 So.2d 166, we affirmed without opinion the trial court’s order finding appellants failed to establish either a permanent or temporary taking of their properties. Given this court’s recent decisions in Test v. Broward County, 616 So.2d 111 (Fla. 4th DCA 1993) and Broward County v. Ellington, 622 So.2d 1029 (Fla. 4th DCA 1993), we write to clarify our earlier decision.
Appellants’ residential properties are located within 3,000 feet of an alternate runway designated for use by smaller aircraft at the Fort Lauderdale-Hollywood International Airport. This area has a yearly day-night average sound level (YDNL) ranging be *642 tween 65 and 70 YDNL.[1] From May 11, 1989, through July 24, 1989, appellee used the alternate runway for commercial aircraft while the main runway underwent an extension and various repairs. During this period, the day-night average sound level (DNL) near appellants’ properties frequently ranged between 81 and 83 DNL. In connection with the expansion of the airport, appellee adopted the “Part 150 Study” which incorporated the Federal Aviation Administration (FAA) guidelines which provide residential land use and related structures situated within an area of 65-70 YDNL are “not compatible and should be prohibited.”[2] Under these FAA guidelines, there is no requirement for the removal of homes situated within the 65-70 YDNL range. Appellee eventually reopened the main runway and again used the alternate runway for smaller aircraft. Appellants brought an inverse condemnation action against appellee alleging its temporary use of the alternate runway resulted in a permanent and substantial decrease in the market value of their properties or, alternatively, amounted to a temporary taking.
To establish a claim for inverse condemnation, appellants were required to demonstrate either (1) a continuing physical invasion of the property, see Village of Tequesta v. Jupiter Inlet Corp., 371 So.2d 663 (Fla.), cert. denied, 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 377 (1979), or (2) a substantial ouster and deprivation of all beneficial use of the property, see Division of Admin., State Dept. of Transp. v. West Palm Beach Garden Club, 352 So.2d 1177 (Fla. 4th DCA 1977).
Appellants’ real estate appraiser testified he valued the properties owned by two homeowners as representative of the properties in this area. He stated the two properties formerly had a fair market value of $80,000 and $200,000 as residential properties but because the area had become incompatible with residential use, the highest and best use of the properties was now industrial resulting in corresponding reduced market values of $42,-000 and $80,000. He further testified that after appellee began using the alternate airstrip as its main runway, the marketplace perceived this area as incompatible with residential use and that appellants’ homes have become difficult to sell because realtors must now advise prospective purchasers that the homes are located in a noisy area. No homes in the area had been sold since May 1989. On cross-examination, the appraiser acknowledged the properties were not zoned for anything other than residential.
Appellee’s appraiser testified he had been retained to assess neighborhood valuation trends in the vicinity of appellants’ properties. Based upon his review of other residential property sales and appraisals conducted in the area, he concluded there had been no substantial decrease in the market values of appellants’ properties as a result of the airport operations either before, during or after May 11, 1989. He stated properties both inside and outside of the 65-70 YDNL line contours indicated similar ranges of market value. In fact, he noted an upward valuation trend in both waterfront homes and non-waterfront homes located within the 65 YDNL areas of the airport.
The trial court found it was “uncontrovert-ed that there was an increase in noise levels over [appellants’] properties causing them inconveniences, disturbances, and annoyances.” The trial court also found that once the main runway reopened, “the noise and pollution levels over [appellant’s] properties returned to their pre-repair levels, the same levels which had been maintained at the *643 properties since the late 1970’s.” Consequently, the trial court concluded appellants failed to establish a permanent taking occurred by demonstrating a substantial decrease in the market value of their properties after May 11, 1989.
The parties presented conflicting evidence on appellants’ claim for inverse condemnation arising from a temporary taking. The trial court acknowledged appellants experienced undesirable living conditions during this period but found appellants were not deprived of the total use and benefit of their properties.
In Test, various parcels of land located in the Ravenswood area immediately west of the Fort Lauderdale-Hollywood International Airport were targeted for condemnation by Broward County in connection with the expansion of the airport. The owners of residential property located within the condemnation area challenged the proposed taking of their property. This court stated when it affirmed the trial court’s order authorizing the taking of the appellants’ property:
[T]he real reason for the condemnation proceeding is indeed the acquisition of this parcel because of the adverse effect of the airport on residential use. In fact, the county offered to allow the appellants to keep their property if they only would agree not to use it as a residence. There was also considerable testimony that according to the studies conducted the noise level at this particular parcel reached unacceptable levels. In 1990 the legislature passed several amendments to the airport zoning laws_ One incompatible use defined in the statute is residential construction in areas exceeding “part 150” noise level requirements. § 333.03(2)(c), Fla. Stat. (1990). The testimony in these proceedings was that this parcel would meet the requirements of an “incompatible use” under the statute and this would establish a public purpose and necessity for the condemnation.
Id., 616 So.2d at 113-14.
In their motion for rehearing en banc, appellants assert this court’s inconsistency in permitting Broward County to take property situated in a sound level area designated as incompatible with residential use (Test), while insulating appellee from inverse condemnation claims where the properties were exposed to similar noise levels (sub judice). We see no inconsistency.
In Test, we prefaced our conclusion by noting the standard for review in a condemnation lawsuit:
A trial court’s order approving condemnation of private property for public use should not be disturbed on appeal when the taking is supported by good faith considerations of cost, safety, environmental protection and long term planning. School Board of Broward County v. Viele, 459 So.2d 354 (Fla. 4th DCA1984), pet. for rev. denied, 467 So.2d 1000 (Fla.1985). The question is whether the petitioner came forward with evidence showing reasonable necessity for the taking. City of Jacksonville v. Griffin, 346 So.2d 988, 990 (Fla.1977). Reasonable necessity should not be construed to mean absolute necessity. Canal Authority v. Miller, 243 So.2d 131,134 (Fla.1970). The condemning authority need not present evidence pinpointing the need for the specific property, rather it is sufficient to show that the taking is necessary for the accomplishment of an overall plan of development. City of Jacksonville, 346 So.2d at 990.
Id. at 113.
Unlike the properties involved in Test and Ellington, appellants’ properties were not located in Ravenswood, an area west of the airport designated to accommodate its necessary expansion. In Ellington, Broward County demonstrated a legitimate need to acquire the targeted property to ensure the orderly implementation of the entire airport expansion project. If certain properties were not taken, the entire scheme of development in this area would suffer because the presence of residential properties within the large commercial development would impair site planning and infrastructure development. More importantly, however, appellants in the instant case were unable to demonstrate a continuing physical invasion of their properties because appellee used the alternate runway only temporarily as the *644 main runway. Furthermore, appellants proved neither a substantial ouster and deprivation of all beneficial use of their properties nor a substantial decrease in the market value of their properties. See Foster v. City of Gainesville, 579 So.2d 774 (Fla. 1st DCA 1991); Sarasota-Manatee Airport Auth. v. Icard, 567 So.2d 937 (Fla.2d DCA 1990), review denied, 576 So.2d 288 (Fla.1991); and Fields v. Sarasota-Manatee Airport Auth., 512 So.2d 961 (Fla.2d DCA 1987), review denied, 520 So.2d 584 (Fla.1988).
The factual findings of a lower tribunal in an inverse condemnation action are entitled to the weight of a jury verdict and should not be disturbed on appeal unless it is shown there was a complete lack of evidence to support the trial judge’s conclusions. See Fields at 964. The record in this case contains substantial, competent evidence to support the trial court’s finding that appellants established neither a temporary nor permanent taking of their properties.
Accordingly, we affirm the trial court’s order.
AFFIRMED.
DELL, C.J., HERSEY, J., and DOWNEY, JAMES C., Senior Judge, concur.

. The Part 150 Study refers to "day-night average sound level” and "yearly day-night average sound level” as “LDN.” The Federal Aviation Administration regulations use the acronyms "DNL” and "YDNL.” See 14 C.F.R. § 150.7 (1993).

. The Part 150 Study adopted by the Board of County Commissioners provides:
The designations contained in this table do not constitute a Federal determination that any use of land covered by the program is acceptable or unacceptable under federal, state, or local law. The responsibility for determining the acceptable and permissible land uses remains with the local authorities. FAA determinations under part 150 are not intended to substitute federally determined land uses for those determined to be appropriate by local authorities in response to locally determined needs and values in achieving noise compatible land uses.