[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14569
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cv-61845-DMM

NOY HADAR,
on behalf of himself and all other similarly situated,

Plaintiff - Appellant,

versus

BROWARD COUNTY,
SOUTHWEST AIRLINES,
SPIRIT AIRLINES, INC.,
AMERICAN AIRLINES GROUP, INC,
DELTA AIRLINES, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 31, 2017)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

The appellant, Noy Hadar, is a property owner who lives beneath the airspace of the flightpath for the south runway at the Fort Lauderdale-Hollywood International Airport. The south runway became operational in 2014 with the approval of Broward County (the "County"). Since that time, Hadar alleges, the frequent low-level overhead flights have caused extreme noise pollution and have interfered with his rights as a homeowner.

Hadar filed this putative class-action lawsuit against the County and multiple airlines (the "Airlines") that use the airport and the new runway. The central issue in this appeal concerns Hadar's federal claim against the County, under 42 U.S.C. § 1983, alleging that the extreme noise pollution amounted to an "unconstitutional taking under the Fifth Amendment," for which he sought to recover damages. Hadar alleged that remedies in Florida state court were unavailable and inadequate.

Following a hearing, the district court granted the County's motion to dismiss Count I—the taking claim—for lack of subject-matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P. The court concluded that Hadar's taking claim was not ripe because he did not exhaust his state remedies before filing suit in federal court, as required by the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).

2

Rejecting Hadar's arguments that Florida's inverse condemnation proceeding was not an available and adequate remedy, the court dismissed his taking claim since he "ha[d] not availed himself of that remedy." The court declined to exercise supplemental jurisdiction over the remaining state-law claims and dismissed these claims without prejudice. Hadar now appeals.

## I.

"The question of ripeness goes to whether the district court had subject matter jurisdiction." *Reahard v. Lee Cty.*, 30 F.3d 1412, 1415 (11th Cir. 1994) (internal quotation marks omitted). We review jurisdictional issues *de novo*. *Id.*

In *Williamson County*, the Supreme Court held that property owners who allege a taking claim under the Fifth Amendment must first seek just compensation through the procedures available under state law before bringing suit in federal court. *See* 473 U.S. at 194–95. The rationale that underlies this rule is the notion that the constitutional violation is not "complete" until the property owner has been denied just compensation for the taking. *Id.* ("The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."). Therefore, if a state provides a "reasonable and adequate provision for obtaining compensation after the taking," "the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195. And if the property owner has not utilized that

3

procedure, such as an inverse condemnation action, the taking claim is "premature" and should be dismissed, unless the plaintiff can show that the state procedure is "unavailable or inadequate." *Id.* at 196–97.

*Williamson County* therefore "requires potential federal court plaintiffs to pursue any available state court remedies that might lead to just compensation before bringing suit in federal court for claims" alleging a taking without just compensation.[1]  *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1303 (11th Cir. 1992).  In other words, "a takings claim is not ripe until all avenues of compensation at the state level have been exhausted."  *Id.*; *see also Agripost, LLC v. Miami-Dade Cty., Fla. (Agripost II)*, 525 F.3d 1049, 1052 (11th Cir. 2008) ("*Williamson County* boils down to the rule that state courts always have a first shot at adjudicating a takings dispute because a federal constitutional claim is not ripe until the state has denied the would-be plaintiff's compensation for a putative taking, including by unfavorable judgment in a state court proceeding.").

---

[1] Courts have interpreted *Williamson County* to require a property owner to make two showings in "just compensation" actions: (1) that there has been a final decision from the relevant governmental entity; and (2) that the plaintiff has exhausted his remedies to obtain just compensation.  *Reahard*, 30 F.3d at 1415.   The final-decision requirement generally is implicated only when the taking claim is based on a regulatory or zoning action for which an administrative review process is available.  *See id.*  Here, Hadar alleged an essentially physical invasion for which no administrative recourse was available.  Accordingly, our inquiry is limited to the exhaustion requirement.  *See Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 958 (7th Cir. 2004) ("We have held that a physical invasion constitutes a 'final decision' and thus satisfies *Williamson* County's first requirement.").

4

Despite the general state-exhaustion requirement, a property owner's federal taking claim brought directly in federal court will be ripe if (1) "the state law provides him no process for obtaining just compensation (such an action for inverse condemnation)," or (2) "the state law appears to provide such process, but due to state interpretation, the process is inadequate." *Agripost, Inc. v. Miami-Dade Cty., ex rel. Manager (Agripost I)*, 195 F.3d 1225, 1231 (11th Cir. 1999); *see also Pascoag Reservoir & Dam, LLC v. Rhode Island*, 337 F.3d 87, 92 (1st Cir. 2003) ("Courts have made exceptions to *Williamson County*'s state action requirement when state law did not recognize the taking that occurred, or did not permit the relief required to make the plaintiff whole."). If state law affords an adequate process for obtaining just compensation, however, the taking claim is not ripe, and the federal court must dismiss the claim for lack of subject-matter jurisdiction. *Agripost I*, 195 F.3d at 1231.

Florida state law recognizes a cause of action for inverse condemnation when a government agency "has taken private property without a formal exercise of the power of eminent domain." *Schick v. Fla. Dep't of Agric.*, 504 So. 2d 1318, 1319 (Fla. Dist. Ct. App. 1987). More to the point, Florida state law provides "a cause of action for inverse condemnation based upon airport operations." *Foster v. City of Gainesville*, 579 So. 2d 774, 776 (Fla. Dist. Ct. App. 1991); *see Fields v.*

*Sarasota-Manatee Airport Auth.*, 512 So. 2d 961, 964 (Fla. Dist. Ct. App. 1987) (stating that "frequent low-level flights over private land may result in a taking").

To establish such a claim for inverse condemnation, plaintiffs must "demonstrate either (1) a continuing physical invasion of the property, or (2) a substantial ouster and deprivation of all beneficial use of the property." *Bakus v. Broward Cty.*, 634 So. 2d 641, 642 (Fla. Dist. Ct. App. 1993) (citations omitted). Evidence of direct overflights of aircraft can establish a continuing physical invasion of the property. *Sarasota-Manatee Airport Auth. v. Icard*, 567 So. 2d 937, 938–39 (Fla. Dist. Ct. App. 1990). Damages are available provided the plaintiff can prove "a substantial loss in market value." *Id.* at 938.

The central thrust of Hadar's appeal is that this state inverse condemnation procedure, though available, is inadequate. But his position is not consistent with our caselaw in this area. We have twice held that "a Florida property owner must pursue a reverse condemnation remedy in state court before his federal takings claim will be ripe." *Reahard*, 30 F.3d at 1417. In *Executive 100*, for instance, we held that the plaintiff's claim alleging a regulatory taking was not ripe because "Florida courts have recognized that . . . property owners have the right to bring reverse condemnation proceedings seeking compensation for regulatory takings." *Exec. 100, Inc. v. Martin Cty.*, 922 F.2d 1536, 1542 (11th Cir. 1991). Likewise, in *Reahard*, we held that a taking claim based on zoning classifications was not ripe

6

because Florida courts "recognized an inverse condemnation remedy based on zoning classifications." *Reahard*, 30 F.3d at 1417–18.  Here, as in both *Executive 100* and *Reahard*, Florida courts recognize an inverse condemnation remedy for the type of taking alleged.  *See, e.g.*, *Foster*, 579 So. 2d at 776.

Despite the availability of a state-court remedy for obtaining compensation for a taking based on airport operations, and despite our decisions requiring potential federal plaintiffs raising similar claims to first utilize Florida's inverse condemnation procedure, Hadar nonetheless maintains that the state remedy is inadequate because, in his view, resorting to that procedure would have been futile. Specifically, Hadar claims that the state remedy is inadequate because he alleged "no property value loss," nor did he seek to have the County condemn the property as deprived of all beneficial use, so his claim would have been dismissed under state law, specifically the Florida appellate court decision in *Bakus*.

So the question is whether the inverse condemnation procedure is inadequate because Hadar did not allege either a deprivation of all beneficial use or a diminished market value as a result of the airport operations.  As for the first, Hadar did not need to allege a deprivation of all beneficial use or seek a condemnation order in order to establish a compensable taking under the inverse condemnation procedure.  *See Bakus*, 634 So. 2d at 642 (inverse condemnation plaintiffs must "demonstrate *either* (1) a continuing physical invasion of the

property, *or* (2) a substantial ouster and deprivation of all beneficial use of the property.") (citations omitted) (emphasis added).   Instead, he could prove "a continuing physical invasion of the property," *id.*, which can result from direct overflights of aircraft, as Hadar alleged in his complaint, *see Icard*, 567 So. 2d at 938–39.

As for the lack of an allegation of property value loss, we are not persuaded that this renders the state procedure inadequate.   As we have established, compensation—the remedy Hadar requested for the alleged taking—is available under the inverse condemnation procedure for a taking based on airport operations. Hadar's contention that his claim would fail under *Bakus* because he alleged no property value loss appears to be no different than one we found to "lack[] merit" in *Executive 100*:

> Plaintiffs claim that *Williamson County* should not apply to their just compensation claim because they do not have a "viable" inverse condemnation claim.   This appears to be nothing more than a concession that their claim of a taking is meritless because the Board has not deprived the plaintiffs of all use of their property.[2]

922 F.2d at 1542 n.13.   Hadar offers no case law from this circuit, other circuits, or the Supreme Court to suggest that we should not follow that same reasoning here.[3]

---

[2] Thus, to the extent Hadar did not allege a "deprivation of all beneficial use of the property" under *Bakus*, that would not render the remedy inadequate under *Executive 100* even if he could not show a continuing physical invasion.

[3] Arguably, the case most supportive of Hadar's position is the Seventh Circuit's decision in *Daniels v. Area Plan Commission of Allen County*, 306 F.3d 445, 455–56 (7th Cir. 2002),

8

Whether his claim is viable is a question separate from whether his claim is premature.[4] *See id.*

Hadar's remaining arguments against the district court's dismissal of his taking claim are unpersuasive. First, the fact that the County has not instituted eminent domain proceedings is not significant because the inverse condemnation remedy is available in situations where a government agency "has taken private property *without* a formal exercise of the power of eminent domain." *Schick*, 504 So. 2d at 1319 (emphasis added).

Second, because the adequacy of the state procedure is determined by reference to state substantive law, the County's actions in this and similar proceedings are not relevant to the question of whether the inverse condemnation procedure is an adequate remedy. The fact that the County vigorously defends inverse condemnation actions says little about whether the process is adequate.

---

which he does not cite or rely upon. The court in *Daniels* agreed with the plaintiffs that the state inverse compensation remedy was inadequate because there was "no monetary loss that begs compensation." *Id.* at 456. But, as noted by the Seventh Circuit later in *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 958–59 (7th Cir. 2004), the plaintiffs in *Daniels* "were seeking only injunctive relief," which was not available in the inverse condemnation procedure. Here, in contrast to *Daniels*, Hadar sought compensation, which *is* available in an action for inverse condemnation. Accordingly, the limited exception applied in *Daniels* would not apply here, even if it had been pressed by Hadar.

[4] As the district court noted, Hadar's concession that he had no evidence of loss would also appear to preclude a federal taking claim. *See Fields*, 953 F.2d at 1308. Hadar asserts that his claim is based on "decreased utility," but he still must plead and prove that "a difference existed in the market value of the property based on the proximity of the airport." *See id.*

9

Third, and relatedly, the district court did not err by refusing to grant Hadar jurisdictional discovery before dismissing his taking claim under Rule 12(b)(1). Before the district court, Hadar requested discovery—including files from other pending airport-noise-pollution cases, particularly those against the County where the plaintiff makes no claim of property-value loss or no claim for condemnation, and files from eminent-domain-proceeding cases regarding the County and the airport—for the purpose of showing "whether and how Hadar's claims are cognizable, pursued, and defended by Broward County."   The court denied Hadar's motion as moot when it dismissed Hadar's complaint for lack of subject-matter jurisdiction.

Attacks on jurisdiction can be either facial or factual.  *McElmurray v. Consol. Gov. of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Facial attacks on jurisdiction are based on the face of the complaint, accepting its allegations as true, *id.*, whereas factual attacks challenge "the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony," *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008).  If the jurisdictional attack is factual, as opposed to facial, the plaintiff ordinarily is entitled to jurisdictional discovery on disputed material facts.  *McElmurray*, 501 F.3d at 1251; *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729–30 (11th Cir. 1982).

10

Here, the district court decided the jurisdictional issue of ripeness as a facial matter. The court accepted as true the factual allegations in Hadar's amended complaint and determined, as a matter of Florida state law, that the state inverse condemnation proceeding was adequate. For the reasons discussed above, we agree. We are not persuaded that the discovery Hadar sought to obtain could have helped him show that the state remedy was inadequate. Accordingly, Hadar was not entitled to jurisdictional discovery. *See McElmurray*, 501 F.3d at 1251.

Finally, Hadar suggests that by dismissing his federal taking claim for lack of subject-matter jurisdiction we will be depriving him of his chosen forum, and possibly a federal forum altogether, and forcing him "to stand in line with 150 plus other homeowners in the sluggish state court procedure." Regardless of Hadar's views of the state system, however, Supreme Court precedent requires Hadar to use it. Indeed, the Court has recognized that there is no absolute "right to vindicate . . . federal claims in a federal forum. . . . That is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by statute or prudential rules[,]" like the *Williamson County* requirements. *San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 342 (2005). And "as a practical matter, a significant number of plaintiffs will necessarily litigate their

11

federal takings claims in state courts." *Id.* at 346–47 (noting that state courts are competent to adjudicate federal constitutional challenges).[5]

In sum, we conclude that Hadar has failed "to pursue any available state court remedies that might lead to just compensation before bringing suit in federal court." *See Fields*, 953 F.2d at 1303. Accordingly, his federal taking claim is premature, and the district court properly dismissed the claim for lack of subject-matter jurisdiction. *See Reahard*, 30 F.3d at 1414–15.

## II.

Hadar also argues that the district court abused its discretion by failing to retain jurisdiction over his state-law unjust-enrichment and trespass claims against the Airlines. In Hadar's view, the court failed to consider the equities of the situation in accordance with the Supreme Court's decision in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988), specifically the "importance of the federal forum for Hadar and the putative class."

Under 28 U.S.C. § 1367, district courts may decline to exercise jurisdiction over supplemental claims in certain circumstances, including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

---

[5] We take no position on whether Hadar can or should make a so-called "*Jennings* reservation" of his federal taking claim in state court. *Compare Fields*, 953 F.2d at 1306 (holding that involuntary state plaintiffs may make a reservation of their federal taking claim in state court so as to later bring the claim in federal court), *with Agripost II*, 525 F.3d at 1055 (noting that "the Supreme Court's reasoning in *San Remo Hotel* seems to undercut much of the support for *Jennings* and *Fields*," but not deciding "whether they have been implicitly overruled" because doing so was unnecessary to the result in that case).

§ 1367(b).    We review the district court's decision to decline to exercise supplemental jurisdiction over state-law claims for an abuse of discretion. *Ameritox Ltd. v. Millenium Labs., Inc.*, 803 F.3d 518, 532 (11th Cir. 2015).

Hadar's reliance on *Cohill* is misplaced.    *Cohill* lists various factors for courts to consider when evaluating whether to retain or decline jurisdiction over supplemental claims.    484 U.S. at 350.    These factors include "the values of judicial economy, convenience, fairness, and comity."    *Id.*    Yet the very next sentence states that "[w]hen the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."    *Id.* (emphasis added).

Here, the district court did not abuse its discretion.    Because Hadar's sole federal-law claim had dropped out of the lawsuit in its early stages and only state-law claims remained, the court properly declined to exercise jurisdiction by dismissing the remaining claims without prejudice.[6]    *See id.*    The court reasonably

---

[6] We do not consider the Airlines' arguments that the claims against them should have been dismissed with prejudice as preempted by federal law.    It is true, as the Airlines indicate, that "[a]n appellee who does not take a cross-appeal may urge in support of a decree any matter appearing before the record, although his argument may involve an attack upon the reasoning of the lower court." *Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) (internal quotation marks omitted).    But it is also true that "an appellee who does not cross-appeal may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Id.* (internal quotation marks omitted).    Here, the Airlines did not take a cross-

13

concluded that the interests of judicial economy and convenience were best served by declining jurisdiction over the state-law claims and allowing the parties to litigate all their claims in one forum. The "importance of the federal forum" for Hadar was not so compelling that it required the district court to retain jurisdiction over his state-law claims.

For these reasons, we affirm the dismissal of Hadar's complaint.

**AFFIRMED.**

---

appeal, and their arguments would lessen the rights of Hadar by dismissing his claims *with* prejudice, as opposed to *without* prejudice. Accepting the Airlines' arguments would preclude Hadar from raising these claims in state court when, under the district court's judgment, he is free to do so. Accordingly, the Airlines' arguments are not properly before us.

14