# United States Court of Appeals
## For the First Circuit

No. 17-1654

YOMAYRA DELGADO-CARABALLO; JUAN RAMÓN DELGADO-CARABALLO;
B.O.G.D., minor; M.G.D., minor,

Plaintiffs, Appellants,

v.

HOSPITAL PAVÍA HATO REY, INC., d/b/a Hospital Pavía Hato Rey;
APS HEALTHCARE PUERTO RICO, INC.; MARJORIE ACOSTA-GUILLOT;
NILSA LÓPEZ,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson, and Barron, Circuit Judges.

Hatuey Infante Castellanos, with whom Hatuey Infante Law
Offices, P.S.C., and Wilbert Méndez Marrero were on brief, for
appellants.
Gloria M. De Corral, with whom De Corral & De Mier was on
brief, for appellee Hospital Pavía Hato Rey, Inc., d/b/a Hospital
Pavía Hato Rey.

Harry Anduze Montaño, with whom José A. Morales Boscio was on brief, for appellee APS Healthcare of Puerto Rico, Inc.

Juan J. Vilella-Janeiro and Vilella-Janeiro Attorneys & Counselors at law for appellee Nilsa Lopéz.

_____

May 7, 2018

_____

**THOMPSON**, <u>**Circuit Judge**</u>.  We write today to undo errors made by the district judge in granting defendants summary judgment in this case.

**Stage-Setting[1]**

*Parties*

Juan and Yomayra Delgado-Caraballo, brother and sister, have been through quite a lot.  So have Yomayra's minor children, referred to pseudonymously as "B.O.G.D." and "M.G.D."[2]  At least that is what the record before us reveals when visualized in the light most favorable to them, as we must.  Just consider the following.

Back on October 1, 2012, Juan and Yomayra had to rush their mother, Natividad Caraballo-Caraballo, to the psychiatric stabilization unit at Hospital Pavía Hato Rey ("Hospital Pavía") after Juan found her in a nervous state (the hospital's cumbersome official name is listed in the caption).[3]  Natividad — who had

---

[1] Because the case is here on a summary judgment for defendants, we present the facts in the light most favorable to plaintiffs, together with the inferences rationally drawable from them (whether plaintiffs can prove these facts at trial remains to be seen, however).  <u>See, e.g.</u>, <u>Rivera-Corraliza</u> v. <u>Morales</u>, 794 F.3d 208, 214 (1st Cir. 2015) (discussing what the summary-judgment standard demands).

[2] For purposes of clarity, we occasionally use first names throughout this opinion.  We mean no disrespect.

[3] All the events mentioned in this part of our opinion occurred in 2012.

- 3 -

tried to kill herself sometime the year before — was not taking meds her psychiatrist had prescribed. A triage nurse at Hospital Pavía described Natividad as "alert" but "anxious" and "disoriented." Performing a medical-screening exam, Dr. Marjorie Acosta-Guillot noted that Natividad's psychiatric history included a "suicide attempt 1 year ago" and that she had "poor compliance or commitment to treatment, exacerbations of depressive symptoms which included anxiety, isolation." Natividad's language and psychomotor skills were somewhat diminished, Dr. Acosta-Guillot added. Ultimately, Dr. Acosta-Guillot diagnosed her with "major depression," though the doctor said she showed good hygiene, demonstrated logical thought processes, and exhibited no suicidal or homicidal inclinations. Convinced that Natividad did not meet the criteria for admission to the stabilization unit, Dr. Acosta-Guillot discharged her with instructions that she take her meds and attend an appointment at an outpatient clinic with APS Healthcare of Puerto Rico ("APS") scheduled for October 3.

On the day of her appointment, Natividad's mother-in-law — someone she was close to — died of cancer and diabetes. Natividad still went to APS, accompanied by Yomayra. Dr. Nilsa López evaluated her there, asked her to continue taking her meds, and scheduled some follow-up appointments. Sadly, Natividad

committed suicide the very next day, October 4.  She was 52 years old.

*Lawsuit*

Nearly two years later, on September 30, 2014, Juan and Yomayra sued Hospital Pavía, APS, Dr. Acosta-Guillot, and Dr. López in federal court.  Yomayra sued on her own behalf and on behalf of her minor children, B.O.G.D. and M.G.D.  They alleged that Hospital Pavía and APS had violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), see 42 U.S.C. § 1395dd, by failing to give Natividad an appropriate screening exam, stabilize her, or transfer her if she could not be stabilized.[4]  And they claimed that each defendant had committed medical malpractice in violation of Puerto Rico law.  See P.R. Laws Ann. tit. 31, §§ 5141-42.[5]  They premised the court's jurisdiction on statutes creating federal-

---

[4] Stripped to its essentials, the EMTALA "requires that a participating hospital" examine everyone who arrives in its emergency room seeking treatment.  And if that exam shows the patient has "an emergency medical condition . . . , the participating hospital must render the services that are necessary to stabilize the patient's condition" — "unless transferring the patient to another facility is medically indicated and can be accomplished with relative safety."  See Correa v. Hosp. S.F., 69 F.3d 1184, 1190 (1st Cir. 1995) (internal citations to the EMTALA omitted).

[5] Plaintiffs also sought recovery from defendants' insurers under P.R. Laws Ann. tit. 26, § 2003 — a statute that says "[a]ny individual sustaining damages and losses" may sue an insurance company directly without joining the named insured, provided the suit is pursued in Puerto Rico.

question jurisdiction, see 28 U.S.C. § 1331, diversity jurisdiction, see id. § 1332, and supplemental jurisdiction, see id. § 1367(a).

*Challenged Ruling*

After discovery, the district judge granted defendants summary judgment. The key parts of the judge's ruling are easily summarized.

Kicking things off, the judge called the EMTALA claim a "survivorship EMTALA action."[6] See Caraballo v. Hosp. Pavía Hato Rey, Inc., Civil No. 14-1738 (DRD), 2017 WL 1247872, at *2 (D.P.R. Mar. 31, 2017). And he reasoned that because the EMTALA "'applies only to participating hospitals with emergency departments'" and because "[p]laintiffs concede[] that 'APS . . . is not a hospital and not subject to the EMTALA provisions,'" he had to jettison the EMTALA claim against APS with prejudice. See id. at *4-5 (emphases removed) (quoting Rodríguez v. Am. Int'l Ins. Co. of P.R., 402 F.3d 45, 48 (1st Cir. 2005)).

---

[6] As the Supreme Court recognized in a different context, a survivorship action, generally speaking, is a suit by the decedent's estate to recover on claims the decedent herself could have recovered on but for her death. See Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 575 n.2 (1974) (touching on the topic), superseded by statute on other grounds as recognized in Miles v. Apex Marine Corp., 498 U.S. 19, 30 n.1 (1990).

As for the EMTALA claim against Hospital Pavía, the judge recognized (at least implicitly) that the EMTALA tells courts to look to state law — defined to include Puerto Rico — regarding the availability of damages. See 42 U.S.C. §§ 410(h), 1395dd(d)(2)(A). Next, the judge read Puerto Rico law as holding that "for an estate to be able to . . . substitute a deceased plaintiff, *all members of the estate must be brought to the suit*." See Caraballo, 2017 WL 1247872, at *6 (quoting Vilanova v. Vilanova, 184 P.R. Dec. 824, 839-40 (2012)). Natividad's estate, the judge then wrote, includes not only Juan and Yomayra but also "Vanessa Delgado Caraballo[] and widower Juan Delgado Gonzalez." See id. at *5. So the judge considered the latter two "necessary part[ies]" under Fed. R. Civ. P. 19(a), saying, for example, that he thought "the absent heirs['] interest might be affected or prejudiced by the decision" on the EMTALA-survivorship claim against Hospital Pavía.[7]

---

[7] Rule 19(a) reads:

**(a) Persons Required to Be Joined if Feasible.**

**(1) Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

See <u>Caraballo</u>, 2017 WL 1247872, at *5-6 (internal quotation marks omitted).  Sort of echoing the words of Fed. R. Civ. P. 19(b), the judge suggested — without any explanation or analysis — that the missing heirs could not "be feasibly joined."[8]  See <u>Caraballo</u>, 2017

---

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**(2) Joinder by Court Order.**  If a person has not been joined as required, the court must order that the person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

**(3) Venue.**  If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

The word "necessary" once appeared in Rule 19(a).  <u>See</u> <u>Republic of Phil.</u> v. <u>Pimentel</u>, 553 U.S. 851, 855 (2008).  But "required" replaced "necessary," thanks to an amendment to the rule.  <u>See</u> <u>id.</u>

[8] Rule 19(b) relevantly reads:

**(b) When Joinder Is Not Feasible.**  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**(2)** the extent to which any prejudice could be lessened or avoided by:

**(A)** protective provisions in the judgment;

- 8 -

WL 1247872, at *6 (internal quotation marks omitted). And he then concluded that the action could not in "'equity and good conscience'" proceed without them, principally because "[i]f the survivorship claim is dismissed with prejudice, the absent heirs would not be able to bring their own federal claim representing the estate against the same particular defendant." Id. at *6-7. Which is why he dismissed the EMTALA-survivorship claim against Hospital Pavía without prejudice. Id. at *7.

Emphasizing that diversity jurisdiction requires complete diversity of citizenship of each plaintiff from each defendant, the judge found that requirement not met here because Juan and Yomayra "are both from Puerto Rico," just like the four defendants. Id. (relying on Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005), which in turn relied on Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806)). Having dismissed the federal-EMTALA claim and having concluded no diversity jurisdiction exists, the judge then declined to exercise supplemental

---

**(B)** shaping the relief; or

**(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. . . .

jurisdiction over the local-law claims and dismissed them without prejudice as well.  Id. at *8.

Plaintiffs later asked the judge to reconsider his decision to dismiss their EMTALA-survivorship claim against Hospital Pavía.  But the judge would not budge.  And this appeal followed.[9]

## Federal-EMTALA Claim

### *Standard of Review*

Our analysis necessarily starts with the standard of review, which is a little tricky because the judge partly relied on Rule 19 in granting defendants summary judgment.  We typically review Rule-19 decisions for abuse of discretion, see Maldonado-Viñas v. Nat'l W. Life Ins. Co., 862 F.3d 118, 121 (1st Cir. 2017), knowing that an error of law is always an abuse of discretion, see Koon v. United States, 518 U.S. 81, 100 (1996); see also United States ex rel. D'Agostino v. Ev3, Inc., 802 F.3d 188, 192 (1st Cir. 2015) (stressing that a judge abuses his discretion if he "adopts and applies the wrong legal rule").  And we normally review summary-judgment decisions with fresh eyes ("*de novo*," in law-speak), see Rivera-Corraliza, 794 F.3d at 214, asking whether the

---

[9] A quick aside:  Dr. Acosta-Guillot did not file an appellate brief.  As a penalty, she could "not be heard at oral argument" without our authorization.  See Fed. R. App. P. 31(c).  She did not ask for permission and did not present oral argument.

summary-judgment winners (here, defendants) are "entitled to judgment as a matter of law" because "there is no genuine dispute as to any material fact," see Fed. R. Civ. P. 56(a) — even after taking all facts and inferences in the light most flattering to the summary-judgment losers (here, plaintiffs), see Rivera-Corraliza, 794 F.3d at 210, 214.  In the present case, these standards come together like this:  if the judge abused his discretion by making an error of law in his Rule-19 analysis, and if that error sabotaged his summary-judgment ruling, then we must vacate that ruling — if not, then we must affirm.  See generally United States v. San Juan Bay Marina, 239 F.3d 400, 403, 405-08 (1st Cir. 2001) (reviewing a summary-judgment ruling driven in part by a Rule-19(b) analysis).

### Plaintiffs' Take[10]

Plaintiffs do not contest the judge's dismissal of the EMTALA claim against APS.  They challenge only his dismissal of the EMTALA claim against Hospital Pavía.  So naturally we confine our attention to that claim.

Importantly too, plaintiffs do not quarrel with the judge's conclusion that Puerto Rico law requires the "joinder of all heirs to a survivorship claim."  See Caraballo, 2017 WL

---

[10] Plaintiffs filed an opening brief but no reply brief.

1247872, at *5. And they essentially concede that, given this reading of Puerto Rico law, the absent heirs are (in Rule-19 lingo) "required part[ies]" to the EMTALA-survivorship action and so must be joined "if feasible." Obviously, given plaintiffs' briefing strategy, we need not — and thus do not — decide whether the judge's reading of Commonwealth law is correct (the ultimate resolution of that question must await another day).

Turning, then, to the EMTALA-survivorship claim, plaintiffs essentially contend that the judge erred in two ways. Quoting Rule 19(a)(2) — which, again, says (emphasis added) that "[i]f a person has not been joined as required," then the judge "*must* order that the person be made a party" — plaintiffs first argue that the judge botched matters by not ordering the missing heirs joined to this suit. They next argue that he gaffed things by assuming, with no analysis, that the absent heirs could not feasibly be joined. To hear them tell it, nothing made joinder "unfeasible" — they premised jurisdiction on the presence of a federal question (through the EMTALA claim), not diversity, they remind us; so joinder would not wreck the jurisdictional predicate for their suit. Ultimately, the judge's off-base assumption, they add, led him to examine what "equity and good conscience" required (a process that involved his weighing the parties' and the absent heirs' interests), which in turn caused him to wrongly dismiss the

- 12 -

EMTALA-survivorship claim against Hospital Pavía.  See Caraballo,

2017 WL 1247872, at *6 (quoting Rule 19(b)).

Staying with the EMTALA claim, plaintiffs argue that

they can sue not only for Natividad's pain and suffering but also

for their own.  To back up their argument, they cite to our Correa

opinion.  There we noted that the EMTALA says:

> Any individual who suffers personal harm as a direct
> result of a participating hospital's violation of a
> requirement of this section may, in a civil action
> against the participating hospital, obtain those damages
> available for personal injury under the law of the State
> in which the hospital is located . . . .

69 F.3d at 1196 (quoting 42 U.S.C. § 1395dd(d)(2)).  We then said

that this language supports "two possible" but conflicting

interpretations.  Id.  One is that "the words 'individual' and

'direct' . . . denot[e] the patient herself, and no one else."

Id.  The other is that the statute "permit[s] an individual who

has a special relationship with another — say, a . . . bereaved

relative — to sue when she is harmed in direct consequence of an

EMTALA violation inflicted upon such other," and "[w]hen death

results," we added, "this reading would naturally extend the

statutory prerogative to individuals who are eligible to bring

survivors' actions under local law."  Id.  Because we found "both

readings . . . superficially plausible," we could not say that the

judge plainly erred in thinking that persons other than patients

(or those suing on the patient's behalf) can recover EMTALA

damages.  Id. at 1196-97. And from this plaintiffs intuit that the EMTALA unquestionably allows persons "other than a patient" to bring "EMTALA claim[s] against a hospital" — they say this even though "a no-plain-error holding does not constitute a 'ruling on the merits.'"  See Rodríguez-Miranda v. Benin, 829 F.3d 29, 44 (1st Cir. 2016) (quoting United States v. Caraballo-Rodriguez, 480 F.3d 62, 70 (1st Cir. 2007)).

*Hospital Pavía's Take*

Tackling the EMTALA-survivorship-claim issue first, Hospital Pavía counters that plaintiffs' summary-judgment papers never argued that the judge defied Rule 19(a)(2)'s mandatory directive by not ordering the absent heirs' joinder.[11]  Thus, Hospital Pavía protests, plaintiffs cannot make that argument here. Cf. generally DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34-35 (1st Cir. 2001) (discussing the "'raise-or-waive' rule" and some of its exceptions).  Shifting to the merits, Hospital Pavía seconds the judge's view that, under Puerto Rico law, all heirs must be joined in a survivorship claim (plaintiffs have no beef with that view, don't forget, at least at this point — so, again, the correctness of that theory is not before us).  Leaning on Rule

---

[11] We repeat that Rule 19(a) declares that "[i]f a person has not been joined as required," then the judge "must order that the person be made a party . . . ."

- 14 -

19(b), Hospital Pavía argues from there that because plaintiffs failed to join the missing heirs and because the judge rightly held the action could not proceed without them, the judge had to dismiss the EMTALA-survivorship claim. Not until later in its brief does Hospital Pavía argue that joinder is "unfeasible." And its sole theory is that because (as it sees things) the statute-of-limitations period for the EMTALA-survivorship claim has already expired, the absent heirs cannot be made parties anyway.

As for plaintiffs' suggestion that they can recover damages under the EMTALA for their own pain and suffering, Hospital Pavía says that they "waived" this issue by not raising it at the summary-judgment stage. Waiver aside, Hospital Pavía argues that the EMTALA's "clear language" allows only the patient (and those suing on her behalf) to recover damages under the statute. In other words, Hospital Pavía believes that plaintiffs cannot bring a private cause of action under the EMTALA because "such actions are not contemplated in the statute." And Hospital Pavía pooh-poohs Correa, calling its plain-error holding "*dictum*."

*Our Take*

Following the parties' lead, we start with the EMTALA-survivorship issue. To understand who is right and who is wrong here, one needs to know how Rule 19 works.

- 15 -

Rule 19 distinguishes between two types of absentees: "those whose joinder is feasible and those whose joinder is not feasible, because it would defeat subject-matter jurisdiction, or the [absentee] is beyond the personal jurisdiction of the court, or the [absentee] has and makes a valid objection to venue." Askew v. Sheriff of Cook Cty, Ill., 568 F.3d 632, 634-35 (7th Cir. 2009). We know this in part because Rule 19(a) talks about "persons required to be joined if feasible," and Rule 19(b) talks about what judges must do "when joinder is not feasible" (excess capitalization omitted, by the way — something we'll do for the remainder of the opinion). See Askew, 568 F.3d at 635.

Rule 19 lays out a two-step process. Starting with Rule 19(a), the judge first decides whether, if the absentees can be joined, they must be joined (absentees cannot be joined if, for example, service-of-process or subject-matter-jurisdiction problems exist). See Fed. R. Civ. P. 19(a)(1). One scenario in which the judge ought to join them (if they can be joined) is if he cannot "accord complete relief among existing parties" without their joinder.[12] Absentees that meet the Rule-19(a)(1) standard are called "required part[ies]" (once called "necessary parties" in days gone by, see Pimentel, 553 U.S. at 855). And if the judge

---

[12] For the other examples, check out footnote 7 above, which quotes Rule 19(a)(1)(A) and (B).

- 16 -

identifies such parties, he then looks to Rule 19(a)(2) — a rule that says that if they have "not been joined as required, the [judge] must order that [they] be made . . . part[ies]." See Askew, 568 F.3d at 635 (quoting Rule 19(a)(2)). As one prominent treatise pithily puts it, if an absentee's joinder is "feasible" and required "for a just adjudication," the judge "must order" joinder since he "has no discretion at this point because of" Rule 19(a)(2)'s "mandatory language." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1611, at 158-62 (3d ed. 2001) (footnotes omitted).

If (and only if) the absentees are required parties but cannot feasibly be joined does the judge, at the second step, pull up Rule 19(b) and see if the suit can proceed without them. See Askew, 568 F.3d at 635; see also Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102, 108-09 (1968). To aid in this effort, the judge looks at various factors — like "the extent to which a judgment rendered in [their] absence might prejudice [them] or the existing parties" — through the lens of "equity and good conscience,"[13] ever mindful that the caselaw generally prefers that judges *not* dismiss suits. See 4 Richard D. Freer, *Moore's Federal Practice — Civil* § 19.02[3][c] & n.54 (3d ed. 2017)

---

[13] Flip back to footnote 8 for the other listed Rule-19(b) factors.

(quoting a case saying that "the phrase 'good conscience,' in 19(b), contemplates that very few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible").

Measured against these benchmarks, the judge's analysis cannot be sustained. Buckle in as we explain.

As we previously noted, the judge — after examining the factors in Rule 19(a)(1)(A) and (B) — essentially held that the missing heirs are required parties. See Caraballo, 2017 WL 1247872, at *5. Then he basically concluded that their joinder was not feasible. We know this to be true, given his laser-like focus on Rule 19(b), see id. at *5-6 — a prescript (we've been at pains to stress, hopefully without becoming tedious) that instructs judges on how to handle situations where (emphasis ours) "joinder is *not feasible*," because of, say, nondiversity. Regrettably, though, the judge never explained why the absent heirs cannot be joined. See id. at *5-7.

Again, by our reading, plaintiffs push two big arguments on the joinder issue. The first (remember) is that after deeming the absent heirs required parties, the judge should have ordered them joined right then and there, as required by the must-order-joinder language in Rule 19(a)(2). Hospital Pavía's comeback is

- 18 -

that because plaintiffs did not develop their "must order" theory in their summary-judgment submissions, they cannot peddle it on appeal. We need not referee this dispute, because plaintiffs' other argument is a winner for them.

The second argument (remember too) is that the judge gave no reason to back up his joinder-is-not-feasible intimation. So true — the judge said nothing (as in zero, zip, zilch) to explain why joinder *cannot* occur, and Hospital Pavía makes no effort to convince us we are wrong about that point. Critically too, Hospital Pavía offers no raise-or-waive objection in response to plaintiffs' second contention — which undoubtedly waives any waiver argument in that direction that it might have had. See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig., 45 F.3d 569, 574 (1st Cir. 1995).

Thus freed to weigh in, we easily conclude that the judge's inadequate Rule-19 analysis is reversible error. After all, our Rule-19 precedent makes plain that a judge abuses his discretion by not offering a "reasoned analysis" or by pushing an "incomplete and inadequate" analysis. Bacardí Int'l Ltd. v. V. Suárez & Co., 719 F.3d 1, 9 (1st Cir. 2013). This describes our situation to a T. And because the judge's legal misstep skewed and undermined his summary-judgment ruling, we must vacate and remand for further proceedings consistent with our analysis above.

See generally Maldonado-Viñas, 862 F.3d at 122-23 (vacating and remanding where the district court did not reach a Rule-19 issue that it should have); Bacardí Int'l Ltd., 719 F.3d at 9 (citing a case vacating and remanding where the district court did not give enough reasoning for its Rule-19 decision); Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 2 (1st Cir. 1998) (per curiam) (vacating and remanding where the district court used an incorrect Rule-19 analysis).

Now on to what Hospital Pavía thinks is its ace up the sleeve — that we (supposedly) can, as an alternative basis for affirmance, fill the hole in the judge's analysis by deeming joinder "unfeasible" because the EMTALA's limitations period has already lapsed (a "Ctrl-f" search for "feasib" in Hospital Pavía's brief reveals this is the only argument it makes for why joinder is not feasible[14]).  But unfortunately for Hospital Pavía, its argument does not do the trick here, for a simple reason.  The judge did not address the statute-of-limitations theory.  And so we need not either.  See Foley v. Wells Fargo Bank, N.A., 772 F.3d

---

[14] For the IT-challenged, Ctrl-f is a keyboard shortcut for the "find command" that lets one find words or phrases in, say, a pdf document.  Pressing the "Ctrl" and "F" buttons brings up a search box.  We did that here, after pulling up Hospital Pavía's brief.  And then we typed in "feas" so that we could capture words like "feasible," "feasibility," and "unfeasible."

63, 75 (1st Cir. 2014) (collecting cases holding that we can decline to affirm a decision on a ground not relied on by the judge); Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 177 (1st Cir. 1994) (noting, among other things, how the district court did not rule on a statute-of-limitations issue, and so we needed to leave the matter "to be determined in the first instance" by that court). The litigants and the judge can delve into the statute-of-limitations matter on remand. See Tutor Perini Corp. v. Banc of Am. Sec. LLC, 842 F.3d 71, 96 (1st Cir. 2016). We, of course, express no opinion as to the ultimate resolution of this question.

That leaves one last EMTALA issue over which disagreement lingers — whether plaintiffs can sue Hospital Pavía for their "personal damages" under that statute. The judge did not address that issue either. And consistent with the just-cited cases, we decline to address it here, leaving it instead for determination on remand. See, e.g., id.; Foley, 772 F.3d at 75; P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 134 (1st Cir. 2010). Yes, we know Hospital Pavía thinks plaintiffs waived the personal-damages issue by not presenting it in their summary-judgment papers — though, for what it's worth, their memo opposing summary judgment seemingly hints that they are pursuing survivorship *and* personal claims. But the parties can duke out

- 21 -

their personal-damages dispute in the district court. As before, we intimate no view about how the judge should rule on this issue.

*Recap*

To summarize our EMTALA-claim conclusions: We do not disturb the grant of summary judgment for APS, because plaintiffs do not attack that piece of the judge's decision. But we vacate the entry of summary judgment for Hospital Pavía so the principals can focus on the outstanding matters discussed above, like helping the judge rework the Rule-19 analysis with the right considerations in mind and determine if plaintiffs can and should recover for their personal damages under the EMTALA.

**Local-Law Claims**

As we explained above, because the judge found no federal-question or diversity jurisdiction existed, he renounced supplemental jurisdiction over the local-law claims without analyzing them. Our vacating part of the judge's summary-judgment ruling on the federal-EMTALA claim undercuts the analysis behind his supplemental-jurisdiction decision. That being so, and in line with past practice, we vacate that aspect of the judge's order declining supplemental jurisdiction and instruct the judge to reinstate the local-law claims. If the judge again tosses out the EMTALA claim before trial, he can reconsider the supplemental-jurisdiction question. See, e.g., Rivera-Corraliza, 794 F.3d at

227 (citing <u>Rodríguez</u> v. <u>Municipality of San Juan</u>, 659 F.3d 168, 181-82 (1st Cir. 2011)).

Not so fast, APS and Dr. López insist. The local-law claims face a statute-of-limitations problem. Or so they believe. And, they argue (APS, explicitly; Dr. López, implicitly), that given this problem, we must hold that the judge should have dismissed the local-law claims with prejudice instead of without prejudice. But the judge did not reach this issue. And we see no reason to reach it either. <u>See, e.g.</u>, <u>Foley</u>, 772 F.3d at 75; <u>Lucia</u>, 36 F.3d at 177. The parties can litigate this statute-of-limitations issue on remand. Like with the other unexplored issues, we take no position on who should win this fight.[15]

**Final Words**

Our bottom line: We let the summary judgment for APS on the EMTALA claim stand (because plaintiffs don't attack it). But

---

[15] On top of all this, because neither APS nor Dr. López filed any cross-appeal, we could not explore their statute-of-limitations issue even if we wanted to. <u>See</u> <u>Figueroa</u> v. <u>Rivera</u>, 147 F.3d 77, 81 (1st Cir. 1998). True, "[a]n appellee who does not take a cross-appeal may 'urge in support of a decree any matter appearing before the record, although his argument may involve an attack upon the reasoning of the lower court.'" <u>See</u> <u>Jennings</u> v. <u>Stephens</u>, 135 S. Ct. 793, 798 (2015) (quoting <u>United States</u> v. <u>Am. Ry. Express Co.</u>, 265 U.S. 425, 435 (1924)). But "an appellee who does not cross-appeal may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" <u>See</u> <u>id.</u> (quoting <u>Am. Ry. Express Co.</u>, 265 U.S. at 435); <u>see also</u> <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 53 (1st Cir. 2011) (emphasizing that "even though an appellee can argue in support of a lower court's ruling in his favor on any

- 23 -

we vacate the summary judgment for Hospital Pavía on the EMTALA claim, leaving it to the parties and the judge to work through the joinder and personal-damages issues. And we also vacate the dismissal of the local-law claims, leaving it to the principals to puzzle out any and all questions related to those claims.

***Vacated in part and remanded for further proceedings consistent with this opinion***. ***Costs on appeal to plaintiffs***.

---

ground made manifest in the record (including grounds not relied on by the lower court), he cannot, without a cross-appeal, argue against a judgment in his favor" to get us to "expand his rights or to diminish the appellant's rights"). Dismissing plaintiffs' local-law claims on statute-of-limitations grounds would be a dismissal with (rather than without) prejudice, see generally Hilton Int'l Co. v. Unión De Trabajadores De La Industria Gastronomica De Puerto Rico, 833 F.2d 10, 11 (1st Cir. 1987) (noting that a "dismissal by the court . . . , even though labelled 'without prejudice,' is, in fact, with prejudice if the statute of limitations has run") — a result that would lessen their rights. So APS and Dr. López's argument is not properly before us. See Hadar v. Broward Cty., 692 F. App'x 618, 624 n.6 (11th Cir. 2017).